IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:15-HC-2239-BO

| | | |
|---|---|---|
| LARRY CONNELL STUBBS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| BRAD PERRITT, | ) | |
| | ) | |
| Respondent. | ) | |

On October 15, 2015, Larry Connell Stubbs ("Stubbs"), a North Carolina inmate, filed pro se a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [D.E. 1]. The matter is before the court to address respondent's pending motion for summary judgment [D.E. 25]. For the reasons discussed below, the court will grant the motion and dismiss Stubbs' petition.

Background:

On June 4, 1973, Stubbs was indicted by a grand jury in Cumberland County on charges of first degree burglary, rape, and larceny. See [D.E. 11-1] at 5–9. On August 6, 1973, Stubbs pleaded guilty to one count of second-degree burglary and one count of assault with the intent to commit rape. Id. at 10–11. The court sentenced Stubbs to life imprisonment for second-degree burglary and a concurrent sentence of 15 years for assault with the intent to commit rape. Id. at 12. Stubbs was represented by Sol Cherry and did not appeal. Id. at 12–13; see also Pet. [D.E. 1] at ¶ 8. Stubbs was seventeen years old at the time of the offense and had turned eighteen at the time of his guilty plea. See State v. Stubbs, 232 N.C. App. 274, 285, 754 S.E.2d 174, 181 (2014), writ dismissed, 771 S.E.2d 292 (N.C. 2015), and aff'd, 368 N.C. 40, 770 S.E.2d 74 (2015).

On October 8, 1974, Stubbs committed the felony offense of attempted escape from prison. See [D.E. 11-2] at 50. On January 16, 1975, Stubbs was convicted of that offense and received an active term of imprisonment of six months maximum to run consecutive to his life sentence. Id.

On August 11, 1977, the Cumberland County Superior Court summarily denied Stubbs' pro se "application for post conviction review" dated August 1, 1977. See id. at 28.

On February 25, 1980, Stubbs filed pro se a motion for appropriate relief ("MAR") in Cumberland County Superior Court. See id. at 29–30. On March 14, 1980, Stubbs, through counsel, amended his MAR. Id. at 31–32. On May 14, 1980, Stubbs received an evidentiary hearing on the MAR. Id. at 33. On May 22, 1980, the MAR was denied by written order. Id. at 34–35.

On August 3, 1981, while incarcerated, Stubbs committed the offense of assault with a deadly weapon. Id. at 50. Stubbs was convicted of that offense on September 16, 1981, and received an active term of imprisonment of two years maximum to run consecutive to his life sentence. Id.

On June 15, 1983, Stubbs completed his sentence for the assault with intent to commit rape conviction, but remained in prison on his life sentence for the second-degree burglary. See id. at 36.

Stubbs was paroled in December 2008. Id. at 36–37. On June 19, 2009, while still on parole, Stubbs committed the offense of driving while impaired ("DWI") in Cumberland County and was convicted of that offense on November 9, 2010. See id. at 36, 48–49. After his DWI conviction, Stubbs' parole was revoked and his life sentence reinstated. Id. at 37. On March 21, 2011, Stubbs completed his sentence for the DWI conviction. Id. at 50.

On May 11, 2011, Stubbs filed a pro se a new motion for appropriate relief ("MAR2") in the Cumberland County Superior Court. See id. at 14–18. The court found the petition non-frivolous and appointed North Carolina Prison Legal Services, Inc., ("NCPLS") to represent Stubbs. Id. at 14–15. On August 13, 2012, the Honorable Gregory A. Weeks, presiding judge, held a hearing and ordered further briefing. See [D.E. 11-3]. On December 5, 2012, Judge Weeks entered a written order granting Stubbs' MAR2, vacating count one of the August 6, 1973, judgment and re-sentencing Stubbs to a term of 30 years for the second-degree burglary conviction. See [D.E. 11-2] at 74–76.

2

On December 5, 2012, the State filed a petition for writ of certiorari, an application for temporary stay, and a petition for writ of supersedeas in the North Carolina Court of Appeals, seeking review of, and a temporary stay of, Judge Weeks' order granting Stubbs' MAR2. See [D.E. 11-4]. On December 10, 2012, Stubbs filed through counsel a response. See [D.E. 11-5]. On December 13, 2012, the North Carolina Court of Appeals granted certiorari review and stayed the MAR2 order pending disposition of the State's appeal. See [D.E. 11-2] at 79–80. On February 4, 2014, the North Carolina Court of Appeals reversed Judge Weeks' MAR2 order and remanded to the trial court for reinstatement of the original August 6, 1973, judgment and commitment. Stubbs, 232 N.C. App. at 275, 754 S.E.2d at 175. Although the opinion resulted in a divided panel of the North Carolina Court of Appeals, the issue raised by the dissenting judge concerned whether that court possessed subject-matter jurisdiction to review Judge Weeks' MAR2 order. See Stubbs, 232 N.C. App. at 288, 754 S.E.2d at 183 (Stephens, J., dissenting) ("Because I believe that this Court lacks subject matter jurisdiction to review the State's arguments, I respectfully dissent."). In these appellate proceedings, Stubbs was represented by counsel. See [D.E. 11-2] at 95; [D.E. 11-8] at 25–26; [D.E. 11-10] at 13; [D.E. 11-13] at 29.

On March 11, 2014, Stubbs filed through counsel a notice of appeal and petition for discretionary review in the North Carolina Supreme Court seeking the following review: (1) whether the North Carolina Court of Appeals had subject-matter jurisdiction to review the MAR2 order; and (2) whether the North Carolina Court of Appeals erroneously applied Eighth Amendment jurisprudence when it reversed the order granting Stubbs' MAR2. See [D.E. 11-10]. On March 24, 2014, the State filed a motion to dismiss Stubbs' notice of appeal on the Eighth Amendment constitutional question and a response to Stubbs' petition for discretionary review. See [D.E. 11-11].

On June 11, 2014, the North Carolina Supreme Court issued an order denying discretionary review "as to issues in addition to those presented as the basis for the dissenting opinion in the Court

3

of Appeals," and an order allowing the State's motion to dismiss the appeal for lack of substantial constitutional question on the Eighth Amendment constitutional question. See [D.E. 11-12]. Stubbs' appeal proceeded solely on the issue of whether the North Carolina Court of Appeals had subject matter jurisdiction to review the MAR2 order. On April 10, 2015, the North Carolina Supreme Court affirmed the North Carolina Court of Appeals' decision as to the issue of the court's subject-matter jurisdiction. State v. Stubbs, 368 N.C. 40, 770 S.E.2d 74, 76 (2015).

On October 15, 2015, Stubbs filed pro se his instant habeas petition [D.E. 1]. After review pursuant to Rule 4 of the Rules Governing Section 2254 cases, the court allowed the petition to proceed [D.E. 5]. Respondent answered the petition and moved for summary judgment. See [D.E. 8, 9]. Stubbs filed a response in opposition to the summary judgment motion. See [D.E. 14, 15, 16].

On February 28, 2017, the court denied without prejudice respondent's motion for summary judgement and appointed NCPLS to represent Stubbs in the matter [D.E. 17]. Stubbs filed through counsel an amended petition [D.E. 22] and an accompanying memorandum in support [D.E. 23].

On June 21, 2017, respondent filed a response to the amended petition [D.E. 24], a motion for summary judgment [D.E. 25], a statement of material facts [D.E. 26], various appendices [D.E. 27, 28, 29], and a memorandum in support of the motion for summary judgment [D.E. 30]. On July 12, 2017, Stubbs filed a statement of material facts [D.E. 31] and a response in opposition to the motion for summary judgment [D.E. 32]. On July 17, 2017, respondent filed a reply [D.E 33].

Arguments:

Stubbs argues that the North Carolina Court of Appeals' "decision is contrary to established federal law concerning proportionality in sentencing and the sentencing of juvenile offenders." Pet'r Mem. [D.E. 23] at 4. Stubbs contends that his sentence violated the Eighth Amendment's prohibition on cruel and unusual punishment because an effective life sentence for second-degree burglary was unconstitutionally disproportionate. Id. at 5–7 (citing Graham v. Florida, 560 U.S. 48,

4

58 (2010), as modified (July 6, 2010); Roper v. Simmons, 543 U.S. 551, 560 (2005)); Adkins v. Virginia, 536 U.S. 304 (2002); Harmelin v. Michigan, 501 U.S. 957, 996 (1991); Solem v. Helm, 463 U.S. 277, 284 (1983); Enmund v. Florida, 458 U.S. 782 (1982); Coker v. Georgia, 433 U.S. 584 (1977)). Stubbs further contends that the reinstatement of his life sentence is also unconstitutional because he was juvenile at the time of the offense. Id. at 7–8 (citing Tatum v. Arizona, 137 S. Ct. 11, 12 (2016); Montgomery v. Louisiana, 136 S. Ct. 718, 734 (2016), as revised (Jan. 27, 2016); Miller v. Alabama, 567 U.S. 460 (2012); Hayden v. Keller, 134 F. Supp. 3d 1000, 1011 (E.D.N.C. 2015), appeal dismissed sub nom. Hayden v. Butler, 667 F. App'x 416 (4th Cir. 2016)).

Respondent argues: (1) Stubbs' petition is barred under the one-year limitation of 28 U.S.C. § 2244(d); (2) Stubbs' sentence is not unconstitutionally disproportionate under Supreme Court precedent; (3) the North Carolina Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established federal law; (4) the Supreme Court's cases regarding juvenile defendants are substantially distinguishable from this case and no precedent supports Stubbs' arguments; (5) a decision in favor of Stubbs' arguments would violate the "new rule" prohibition announced in Teague v. Lane, 489 U.S. 288 (1989); and (6) Stubbs failed to exhaust in state court any claim as to juvenile defendant sentencing/parole. See Resp't Mem. [D.E. 30].

Stubbs responds that one-year period of limitations in 28 U.S.C. § 2244(d) should not apply because he was not subject to life imprisonment for a second time until his DWI conviction on November 9, 2010, the "date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." See [D.E. 32] at 1 (quoting 28 U.S.C. § 2244(d)(1)(D)). Stubbs contends that, because he filed his MAR2 on May 11, 2011, only 183 days later, the statute of limitations was thereby tolled until July 9, 2015, the conclusion of his appeals process regarding the MAR2 decision. Because Stubbs filed his present habeas petition on October 15, 2015, he argues that the petition fell well within the one-year period of limitations. Id. at 2.

5

Respondent replies that the relevant date of the factual predicate for Stubbs' federal habeas claim was the date of original sentencing, not the date of his parole revocation. See [D.E. 33] at 2–3.

## Legal Framework:

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner is required to exhaust state court remedies before seeking habeas writ in federal court. 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement demands that state prisoners give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). A habeas petitioner has the burden of proving that he or she has exhausted the applicable state remedies. Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994).

Under AEDPA, a federal court cannot grant habeas relief in cases where a state court considered a claim on its merits unless (1) the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or (2) the state court decision was based on an unreasonable determination of the

facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A state court decision is "contrary to" precedent if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court's result. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also White v. Woodall, 134 S. Ct. 1697, 1702–07 (2014).

"Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011). Federal courts apply a "highly deferential standard" when evaluating state-court rulings, Cullen v. Pinholster, 563 U.S. 170, 181 (2011), and a state court's factual determination is presumed correct, unless rebutted by clear and convincing evidence, see 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

Congress intended the standard outlined in AEDPA to be difficult to meet. See Woodall, 134 S. Ct. at 1702. In order to prevail, a habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has provided the following synopsis of the relevant inquiry as to allegedly disproportionate sentences under the framework of the Eighth Amendment and Supreme Court precedent:

> The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. Punishment is deemed cruel and unusual not only when it is "inherently

7

barbaric," but also when it is disproportionate to the crime for which it is imposed. Graham v. Florida, 560 U.S. 48, 59, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010); see Weems v. United States, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910) (referring to the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense").

A defendant may challenge the proportionality of a sentence under the Eighth Amendment in two different ways. Under an "as-applied" challenge, a defendant contests the length of a certain term-of-years sentence as being disproportionate "given all the circumstances in a particular case." Graham, 560 U.S. at 59, 130 S.Ct. 2011. In a "categorical" challenge, a defendant asserts that an entire class of sentences is disproportionate based on "the nature of the offense" or "the characteristics of the offender." Id. at 60, 130 S.Ct. 2011. . . .

The Supreme Court has emphasized the limited scope of both types of proportionality challenges. In the context of an as-applied challenge, the Court has explained that the "narrow proportionality principle" of the Eighth Amendment "does not require strict proportionality between crime and sentence," but "forbids only extreme sentences that are grossly disproportionate to the crime." Graham, 560 U.S. at 59–60, 130 S.Ct. 2011 (quoting Harmelin v. Michigan, 501 U.S. 957, 997, 1000–01, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring)) (internal quotation marks omitted). Before an appellate court concludes that a sentence is grossly disproportionate based on an as-applied challenge, the court first must determine that a "threshold comparison" of the gravity of the offense and the severity of the sentence "leads to an inference of gross disproportionality." Id. (quoting Harmelin, 501 U.S. at 1005, 111 S.Ct. 2680 (Kennedy, J., concurring)) (brackets omitted). In the "rare case" that a reviewing court concludes that such an inference may be drawn, the court is required to compare the defendant's sentence: (1) to sentences for other offenses in the same jurisdiction; and (2) to sentences for similar offenses in other jurisdictions. Id. If this extended analysis validates the threshold determination that the sentence is grossly disproportionate, the sentence is deemed "cruel and unusual" punishment under the Eighth Amendment. Id. . . .

With respect to a categorical challenge, the reviewing court first determines whether a "national consensus against the sentencing practice at issue" is evident from "objective indicia of society's standards, as expressed in legislative enactments and state practice." Graham, 560 U.S. at 61, 130 S.Ct. 2011. Next, the court exercises its "independent judgment whether the punishment in question violates the Constitution." Id. Thus, a categorical challenge "requires consideration of the culpability of the [class of] offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question." Id. at 67, 130 S.Ct. 2011.

Before 2010, the Supreme Court had deemed only certain classes of death sentences as being categorically disproportionate. The Court held that capital punishment was unconstitutional under certain circumstances, either because offenders' underlying convictions fell outside the "narrow category of the most

serious crimes," see, e.g., Kennedy v. Louisiana, 554 U.S. 407, 420, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008) (rape), Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) (certain types of felony murder), or because some populations of offenders had diminished personal responsibility for their crimes, such as persons who are intellectually disabled, see Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), and juveniles, see Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).

In recent years, the Court has extended its use of the categorical analysis to a very narrow group of non-capital prison sentences involving juvenile offenders. Employing a categorical analysis, the Court has barred certain sentences of life imprisonment without parole for juveniles. See Graham, 560 U.S. 48, 130 S.Ct. 2011 (prohibiting life imprisonment without parole for juveniles convicted of non-homicide crimes); Miller v. Alabama, ___ U.S. ___, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) (barring mandatory life imprisonment without parole for juveniles convicted of homicide crimes). The Court linked its "unprecedented" willingness to reverse noncapital sentences to this narrow, special context of juvenile offenders, for whom a life sentence without parole can be "likene[d] . . . to the death penalty itself," particularly given the reality that a juvenile will spend more of his life in prison than an adult. Miller, 132 S.Ct. at 2466.

United States v. Cobler, 748 F.3d 570, 575–77 (4th Cir. 2014), cert. denied, 135 S. Ct. 229 (2014).

Analysis:

As an initial matter, the court declines to address respondent's argument that Stubbs' petition is time barred [D.E. 30, 33]. Instead, the court will address the merits of Stubbs' claims. See Rivera v. Quarterman, 505 F.3d 349, 354–55 (5th Cir. 2007); cf. Rule 5(b), Rules Governing Section 2254 Cases in the United States District Courts; Wood v. Milyard, 132 S. Ct. 1826, 1832 (2012).

Stubbs' argument, distilled, is that the North Carolina Court of Appeals decision overturning his favorable MAR2 was contrary to, or an unreasonable application of, clearly established federal law because the reinstatement of his life sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment. Pet'r Mem. [D.E. 23] at 5. Stubbs specifically contends that his life sentence should now be recognized as excessively disproportionate due to the "evolving standards of decency that mark the progress of a maturing society." Id. (quoting Graham, 560 U.S. at 58) (internal quotation marks omitted). Alternatively, Stubbs contends that, because he was a juvenile

9

at the time of the offense, the imposition of a life sentence likewise violates the Eighth Amendment. Id. at 7–8. Thus, Stubbs makes both an "as-applied" challenge and a "categorical" challenge as to the proportionality of his sentence. See Cobler, 748 F.3d at 575.

As noted above, Stubbs was charged in 1973 with first-degree burglary, rape, and larceny. [D.E. 11-1] at 5–9. He pleaded guilty to second-degree burglary and assault with the intent to commit rape. Id. 10–11. Stubbs was sentenced to life imprisonment for the burglary with a concurrent sentence of 15 years for assault with the intent to commit rape. Id. at 12.

In order to obtain a conviction for assault with intent to commit rape, "the State must show by evidence 'not only an assault, but that the defendant intended to gratify his passion on the person of the woman, and that he intended to do so, at all events, notwithstanding any resistance on her part.'" State v. Burnette, 242 N.C. 164, 172, 87 S.E.2d 191, 196 (1955) (quoting State v. Massey, 86 N.C. 658, 660 (1882)). Circa 1973, the punishment for assault to commit rape was imprisonment for not less than one year nor more than fifteen years. N.C. Gen. Stat. § 14-22 (1969), repealed by 1979 N. C. Sess. Laws, ch. 682, § 7, and replaced.

North Carolina statutorily adopted the common law definition of burglary, see N.C. Gen. Stat. § 14-51, requiring the elements of "breaking and entering [d]uring the nighttime of a dwelling or sleeping apartment with intent to commit a felony therein," State v. Frank, 284 N.C. 137, 145, 200 S.E.2d 169, 175 (1973) (quoting State v. Mumford, 227 N.C. 132, 41 S.E.2d 201 (1947)). The two degrees of burglary are distinguished as follows: "[i]f the burglarized dwelling is occupied, it is burglary in the first degree; if unoccupied, it is burglary in the second degree." Id. (citing N.C. Gen. Stat. § 14-51; State v. Cox, 281 N.C. 131, 187 S.E.2d 785 (1972)). In 1973, "[t]he punishment for burglary in the second degree [was] 'imprisonment in the State's prison for life, or for a term of years, in the discretion of the court.'" State v. Edwards, 282 N.C. 578, 580, 193 S.E.2d 736, 737 (1973) (quoting N.C. Gen. Stat. § 14-52); see also Jones v. Ross, 257 F. Supp. 798, 801 (E.D.N.C.

10

1966) (dismissing a habeas petition contesting a 15 to 20 year sentence for second-degree burglary; noting the maximum second-degree burglary punishment was "fixed by law" as life imprisonment; and finding that "[t]he discretionary element of the second-degree burglary penalty was that the judge could impose a lesser penalty than that of the specific maximum allowed of life imprisonment.").

At the time of Stubbs' guilty plea, the sentences imposed were explicitly authorized by statute and could not be said to be uncommon. See, e.g., State v. Allen, 279 N.C. 115, 117, 181 S.E.2d 453, 454 (1971) (noting that a jury sentenced the defendant to life imprisonment after convicting him of second-degree burglary), overruled in part on other grounds by State v. Hickey, 317 N.C. 457, 346 S.E.2d 646 (1986); State v. Harris, 277 N.C. 435, 436, 177 S.E.2d 865, 867 (1970) (affirming the trial court's imposition of a prison sentence of not less than twelve nor more than fifteen years for assault with intent to commit rape); State v. Giles, 34 N.C. App. 112, 113, 237 S.E.2d 305, 306 (1977) (affirming the trial court's imposition of a prison sentence of not less than ten nor more than fifteen years for assault with intent to commit rape). Moreover, by pleading guilty to second-degree burglary and assault to commit rape, Stubbs avoided the prospect of a mandatory death sentence had he been found guilty of either the charged rape or first-degree burglary offenses. See State v. Waddell, 282 N.C. 431, 445, 194 S.E.2d 19, 28–29 (1973) (noting that, when a jury returned a guilty verdict for any capital offense–rape, first-degree murder, arson, or first-degree burglary–the trial court could not instruct the jury that it had the discretion to sentence the defendant to life imprisonment; rather, the trial court was *required* to "pronounce a sentence of death"); cf. State v. Barber, 278 N.C. 268, 275, 179 S.E.2d 404, 409 (1971) (noting that "[N.C. Gen. Stat. §] 14-21 *provides* for the death penalty for rape, and [N.C. Gen. Stat. §] 14-52 *provides* for the death penalty for burglary in the first degree" (emphasis added)).

After considering the circumstances of the case, the nature of the crime, and the sentence imposed, the Court finds no inference of gross disproportionality. Compare Solem, 463 U.S. at 303

11

(finding unconstitutional a sentence of life without parole for a recidivist who passed a bad check for $100), with Harmelin, 501 U.S. at 996 (holding that a mandatory life sentence without parole for possessing 650 grams of cocaine was not cruel and unusual in the constitutional sense), and Cobler, 748 F.3d at 576 (noting the "as applied" standard "forbids only extreme sentences that are grossly disproportionate to the crime," and "[s]ince the decision in Solem, no defendant before the Supreme Court has been successful in establishing even a threshold inference of gross disproportionality").

Stubbs also attempts to raise a "categorical challenge," see Cobler, 748 F.3d at 575, to the reinstatement of his life sentence either due to the "evolving standards of decency," see Pet'r Mem. [D.E. 23] at 5 (quoting Graham, 560 U.S. at 58), and/or because he was a juvenile at the time of the offense, id. at 7–8. The court notes that Stubbs was seventeen at the time he committed the crimes and, therefore, not a juvenile under then-current North Carolina law. See Stubbs, 232 N.C. App. at 285 n.4, 754 S.E.2d at 181 n.4 (citing N.C. Gen. Stat. § 7A–278(1) (1973)). Moreover, Stubbs' life sentence statutorily *required* the possibility of parole. See id. at 275 n.1, 754 S.E.2d at 176 n.1 (citing N.C. Gen. Stat. § 148–58 (1973)). Because the Supreme Court decisions to which Stubbs cites address the Eighth Amendment standards for either the imposition of the death penalty or for life sentences for juvenile offenders *without* the possibility of parole, these cases are materially distinguishable from the present matter. Cf. Montgomery, 136 S. Ct. at 734 (finding retroactive the constitutional rule announced in Miller); Miller, 567 U.S. at 479 (holding that the "Eighth Amendment forbids a sentencing scheme that mandates life in prison *without* possibility of parole for juvenile offenders" (emphasis added)); Graham, 560 U.S. at 74–75 (prohibiting life sentences *without* parole for a non-homicide juvenile offender); Roper, 543 U.S. at 560, 568 (2005) (forbidding the death penalty for juvenile offenders under 18); Adkins, 536 U.S. at 321 (forbidding the execution of mentally retarded criminals); Enmund, 458 U.S. at 801 (prohibiting the death penalty for non-

homicide crimes); Coker, 433 U.S. at 600 (holding that a death sentence is disproportionate punishment for the crime of rape). Only Stubbs' reference to Solem requires further discussion.

In Solem, the Supreme Court considered the case of a habitual offender sentenced to life imprisonment without possibility of parole after pleading guilty to passing a bad check in the amount of $100. See Solem, 463 U.S. at 280–83. The Solem Court noted that the defendant's prior felony convictions were for "relatively minor" non-violent crimes that were not perpetrated "against a person." Id. at 296–97. The Solem Court concluded that a life sentence without parole was prohibited by the Eighth Amendment because it was significantly disproportionate to the defendant's "relatively minor criminal conduct." Id. at 303.

This case is substantially distinguishable from Solem because, as noted above, Stubbs pleaded guilty to serious, violent crimes against a person and was sentenced to life imprisonment *with* the possibility of parole. See [D.E. 11-1] at 5–12; Stubbs, 232 N.C. App. at 275 n.1, 754 S.E.2d at 176 n.1. In short, because the cases to which Stubbs cites do not establish a "national consensus against" the sentence of life imprisonment *with* the possibility of parole, see Cobler, 748 F.3d at 577 (quoting Graham, 560 U.S. at 61), Stubbs' "categorical challenge" to the proportionality of his sentence likewise fails, see id. at 578 (noting that "'extensive proportionality analysis' is required 'only in those cases involving life sentences without parole,' or, alternatively, in cases involving 'terms of years without parole' that are functionally equivalent to life sentences 'because of [the defendants'] ages.'" (quoting United States v. Rhodes, 779 F.2d 1019, 1028 (4th Cir. 1985))).

To the extent that Stubbs argues that, although he was a juvenile offender, he lacked a "realistic opportunity to receive parole before the end of [his life] term," Graham, 560 U.S. at 82; see also Pet'r Mem. [D.E. 23] at 8 (paraphrasing Graham), this is counterfactual. As noted above, Stubbs was not considered a juvenile at the time of his offense, his life sentence included the possibility of parole, and, most importantly, he actually was paroled from his life sentence between

13

December 2008 and November 2010 until his parole was revoked due to his DWI conviction. Thus, Stubbs' argument that his second-degree burglary sentence was functionally equivalent to a life sentence without parole is without merit. Cf. Hayden, 134 F. Supp. 3d at 1009.

To the extent that Stubbs argues that the Supreme Court's holding in Miller, 567 U.S. at 479, should be extended to find that life sentences *with* the possibility of parole are constitutionally disproportionate for non-homicide juvenile offenders, this proposed categorical rule is not supported by clearly established Supreme Court precedent, see 28 U.S.C. § 2254(d)(1); Cobler, 748 F.3d at 580-81 (noting that "the only two contexts in which the Supreme Court categorically has deemed sentences unconstitutionally disproportionate" were sentences involving either the death penalty or life *without* the possibility of parole for a juvenile offender); see also Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) ("when a Supreme Court decision does not 'squarely address[ ] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in these recent decisions . . . it cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue before us, and so we must defer to the state court's decision." (quoting Wright v. Van Patten, 552 U.S. 120, 124 (2008))). Moreover, a decision in favor of this argument would violate the Supreme Court's "new rule" prohibition recognized in Teague, 489 U.S. at 297 (generally prohibiting the courts from recognizing a "new rule" on habeas review without Supreme Court precedent); see also Lambrix v. Singletary, 520 U.S. 518, 527–528 (1997) (inquiring whether the unlawfulness of a defendant's conviction "was apparent to all reasonable jurists" to determine if a rule was "*dictated* by then-existing precedent").

To the extent that Stubbs contends that North Carolina's parole system for juvenile offenders is itself unconstitutional, see Pet'r Mem. [D.E. 23] at 8 (asserting that "he is now subject to an unconstitutional parole regime"), Stubbs did not exhaust this claim because he neither presented it in his MAR2 or before the North Carolina Court of Appeals. See O'Sullivan, 526 U.S. at 845.

14

Therefore, North Carolina courts have not had "one full opportunity to resolve [these] constitutional issues," id., and this claim is procedurally defaulted, see also Mallory, 27 F.3d at 994.

Succinctly stated, no Supreme Court precedent supports Stubbs' arguments that his life sentence is unconstitutionally disproportionate to the severity of his crime or otherwise violates the dictates of the Eighth Amendment. Accordingly, Stubbs has not met his burden of showing that the North Carolina Court of Appeals's decision in question was based on an unreasonable determination of facts; lacked justification; or reached a result contrary to, or involved an objectively unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)–(e); Woodall, 134 S. Ct. at 1702; Pinholster, 563 U.S. at 181; Harrington, 562 U.S. at 103; Williams, 529 U.S. at 405.

For the reasons discussed above, the court finds that the respondent is entitled to summary judgment. See Anderson, 477 U.S. at 249. Further, because Stubbs has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c), the court also will deny a certificate of appealability. See Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## Conclusion:

In sum, the court GRANTS respondent's motion for summary judgment [D.E. 25]; DISMISSES Stubbs' petition seeking a writ of habeas corpus [D.E. 1, 22]; DENIES a certificate of appealability; and DIRECTS the clerk to close the case.

SO ORDERED, this 10 day of February 2018.

*Terrence Boyle*
TERRENCE W. BOYLE
United States District Judge